RENDERED: OCTOBER 14, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0242-MR

JENNIFER HALL                                                    APPELLANT

APPEAL FROM FLOYD CIRCUIT COURT
v.      HONORABLE JOHNNY RAY HARRIS, JUDGE
ACTION NO. 19-CI-00505

HIGHLANDS HOSPITAL
CORPORATION AND
CONSOLIDATED HEALTH
SYSTEMS, INC.                                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

ACREE, JUDGE: Appellant Jennifer Hall appeals the Floyd Circuit Court's

October 21, 2020 order granting summary judgment in favor of Appellees

Highlands Hospital Corporation and Consolidated Health Systems. We affirm.

## BACKGROUND

From October 2017 until January 29, 2019, Appellant worked at an after-hours clinic operated by Appellees. When Appellees determined Appellant breached patient confidentiality, they terminated her employment.

Appellant worked as a medical assistant, which involved assisting healthcare providers at the clinic. Immediately after being hired, Appellant received extensive training concerning the confidentiality of the clinic's patients and the importance of protecting patient confidentiality. Appellees fired Appellant over two instances in which Appellant revealed patient confidential information.

The first incident occurred on January 10, 2019, when Appellant commented on a Facebook post concerning the death of a patient. She posted: "Please be in prayer for the family of one of my sweet patients[.]" By doing so, Appellant revealed the deceased had been a patient, which constituted revealing confidential information in violation of Appellee's policies. We agree with the circuit court that this violation likely did not amount to a material violation of Appellee's policies we discuss below.

The second, and more serious violation, occurred on January 14, 2019, when a female patient presented to the clinic with a spot on the back of her thigh. A doctor looked at the mark and treated the patient for, what the doctor believed, was a chemical burn. Appellant believed the doctor misdiagnosed the

patient and took a picture of the mark with her personal cellphone. Both parties dispute whether Appellant had permission to take the photo, but whether she had permission is irrelevant to our analysis.

After taking the photo, Appellant began showing the photo to her co-workers (nine in total, eight which were not directly involved in the patient's care), believing the doctor misdiagnosed the mark. After showing another doctor the photo, the second doctor re-diagnosed the mark, confirming Appellant's suspicion. However, when the patient learned of Appellant's conduct, she reported Appellant to Appellees.

Initially, Appellees suspended Appellant without pay while it investigated Appellant's actions. After this investigation, Appellees terminated Appellant for violations of numerous policies maintained by Appellees.

Appellees required Appellant (and all employees) annually to review and sign the Highlands Health System Employee Confidentiality Agreement, which states: "I will not intentionally share or release confidential information about the patient to anyone not directly involved in the patient's care[.]" Under this policy, patient information may only be shared with individuals directly involved with the patient's care. Co-workers not directly involved in the patient's care should not be told confidential information about a patient.

Additionally, Appellees have a Wireless Communication Devices Policy, which prohibits the use of personal cellphones in patient treatment areas to take photographs. Appellees also maintain a Confidential Matters Policy, which states: "[r]easons for admission and information about diagnosis and treatment are absolutely confidential and must be respected as such[.]" Appellee also has a Social Media Policy, which prohibits employees from sharing information about patients, including a patient's identity, on social media.

Additionally, as the circuit court noted, Appellant was trained (as all employees are) "how to report a concern regarding patient safety or care issues[.]" (Record (R.) at 558).

In August 2019, Appellant filed suit against Appellees alleging they violated KRS[1] 216B.165(3), which prohibits employers from retaliating against employees who makes reports regarding their reasons for "believ[ing] that the quality of care of a [healthcare] patient . . . is in jeopardy[.]" KRS 216B.165(1), (3). Appellant alleges her actions fall under the protection of that statute. She also later amended her complaint to include a defamation claim.

Appellee filed a motion for summary judgment, and the circuit court granted the motion as to all claims.

This appeal follows.

---

[1] Kentucky Revised Statutes.

## STANDARD OF REVIEW

A circuit court properly grants summary judgment "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[2] 56.03. "An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exist[ed] and the moving party was entitled to judgment as a matter of law." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018).

Thus, appellate courts use *de novo* review when reviewing a circuit court's order granting summary judgment. *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019). However, summary judgment "is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).

## ANALYSIS

The statute governing Appellant's retaliatory discharge claim states, in full, as follows:

> (1) Any agent or employee of a health care facility or service licensed under this chapter who knows or has

---

[2] Kentucky Rules of Civil Procedure.

reasonable cause to believe that the quality of care of a patient, patient safety, or the health care facility's or service's safety is in jeopardy shall make an oral or written report of the problem to the health care facility or service, and may make it to any appropriate private, public, state, or federal agency.

(2) Any individual in an administrative or supervisory capacity at the health care facility or service who receives a report under subsection (1) of this section shall investigate the problem, take appropriate action, and provide a response to the individual reporting the problem within seven (7) working days.

(3) No health care facility or service licensed under this chapter shall by policy, contract, procedure, or other formal or informal means subject to reprisal, or directly or indirectly use, or threaten to use, any authority or influence, in any manner whatsoever, which tends to discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any agent or employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the health care facility or service the circumstances or facts to form the basis of a report under subsections (1) or (2) of this section. No health care facility or service shall require any agent or employee to give notice prior to making a report, disclosure, or divulgence under subsections (1) or (2) of this section.

(4) All reports, investigations, and action taken subject to this chapter shall be conducted in a manner that protects and maintains the confidentiality of patients and personnel and preserves the integrity of data, information, and medical records.

(5) All health care facilities and services licensed under this chapter shall, as a condition of licensure, abide by the terms of KRS 216B.155 and this section.

(6) No agent or employee of a health care facility or service shall file a report under subsection (1) or (2) of this section in bad faith and shall have a reasonable basis for filing a report.

KRS 216B.165. We apply the statute to Appellant's claim just as the circuit court did.

To establish a *prima facie* claim of retaliation against Appellees, the Appellant need to demonstrate: (1) she engaged in a protected activity, (2) Appellee knew about the protected activity, (3) Appellee took an adverse employment action against her because of it, and (4) there is a causal connection between the adverse employment action taken by Appellee and the protected activity. *Colorama, Inc. v. Johnson*, 295 S.W.3d 148, 152 (Ky. App. 2009). This is the same analysis applied in other species of retaliation claims. *See Kentucky Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 133-34 (Ky. 2003) (retaliation for reporting civil rights violations, KRS 344.280).

When challenged by summary judgment motion, Appellant was required to produce evidence that all her conduct was protected activity. We conclude that some of Appellant's activity was protected. However, much of her activity did not just violate Appellees' policies; it violated KRS 216B.165(4) which requires that, to qualify as protected, "[a]ll reports, investigations, and action taken subject to this chapter shall be conducted in a manner that protects and maintains the confidentiality of patients . . . ."

-7-

Furthermore, KRS 216B.165(1) requires that an "oral or written report" be made "to the health care facility or service," not to co-workers unrelated to the patient's care, so that an "individual in an administrative or supervisory capacity at the health care facility or service who receives [such] report under subsection (1) of this section shall investigate . . . ." KRS 216B.165(2). Here, the second doctor with whom Appellant shared the photo and her concerns may have been an individual in an administrative or supervisory capacity. However, even a broad reading of KRS 216B.165 would not shroud as protected activity Appellant's showing the photograph of a patient's injured leg to eight other individuals, none of whom were directly involved in the patient's care. That activity is not protected under KRS 216B.165.

Appellant's activity clearly violated Appellee's policies and, if deemed an attempt at reportage under KRS 216B.165, violated subsection (4) of that statute. Such conduct constitutes non-pretextual cause to terminate Appellant's employment. For these reasons, Appellant's argument for reversing the summary judgment fails. The circuit court did not err in granting it.

Finally, we address Appellant's defamation claim. To prevail on a defamation claim, Appellant must show: (1) Appellee used defamatory language about the plaintiff; (2) Appellee published the defamatory language; and (3) the language must cause injury to Appellant's reputation. *Columbia Sussex Corp. v.*

*Hay*, 627 S.W.2d 270, 273 (Ky. App. 1981). In reviewing the record, we find nothing to indicate Appellant produced evidence to create a genuine issue regarding the material facts to support such a claim and, thereby, defeat the summary judgment motion regarding her defamation claim. Accordingly, we find no error on the circuit court's part in granting the motion as to that claim.

## CONCLUSION

For the aforementioned reasons, we affirm.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Earl M. McGuire
Prestonsburg, Kentucky

BRIEF FOR APPELLEE:

Laura L. Mays
Lexington, Kentucky